**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY SWANEGAN,<br>Plaintiff,<br><br>v.<br><br>WARDEN C. HARRISON,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:26-cv-02108-SHL-tmp |

**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT, DENYING § 2241 PETITION, CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Before the Court are pro se Petitioner Anthony Swanegan's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("§ 2241 Petition") (ECF No. 2), Respondent Warden Harrison's Motion to Dismiss, or In the Alternative, Motion for Summary Judgment and Supporting Memorandum of Law (ECF No. 9), and Swanegan's reply (ECF No. 11). In his Petition, Swanegan challenges the manner in which his disciplinary proceeding was conducted, arguing due process violations. However, for the following reasons, Harrison's Motion is **GRANTED**, and Swanegan's § 2241 Petition is **DENIED**.

## BACKGROUND

Swanegan is currently serving 160 months of incarceration "for a conspiracy to possess with intent to distribute a controlled substance and money laundering." (ECF No. 9-1 at PageID 47.) His expected release date is March 15, 2030. (Id.)

On April 25, 2025, while Swanegan was incarcerated at the Federal Prison Camp Duluth in Duluth Heights, Minnesota, Officer E. Helland wrote an incident report charging him with violations of: (1) Code 199—Disruptive Conduct—Greatest—Most Like 115—Destroy/Dispose

Item-Search (Attempting); (2) Code 307—Refusing to Obey an Order; and (3) Code 224—Assaulting Without Serious Injury. (Id. at PageID 60.) Officer Helland set forth the following facts:

> On April 20th, 2025, at approximately 3:37pm, I was conducting rounds through dorm 211. I proceeded upstairs and entered the 2nd floor east hallway. Upon passing by the 1st south TV room door, I observed inmate Swanegan . . . sitting at the table on the west side of the TV nearest the door. His attention was on his lap area, with his head down and he was holding something just out of view with both hands. I had continued down the hallway only a few feet, turned around and I stood in the doorway of the TV room. By this time, inmate Swanegan had stood up from his chair and was walking right at me. I asked, "what did you have in your hands?" He replied, "nothing, just the remote control." The remote was sitting on top of the table at the time he was still approaching me. I ordered him to stop and turn around, but he ignored that order. He continued to walk right into me, and with his arms down and at his sides/behind his back, he proceeded to push into me with his chest. He had begun pushing me several feet backwards into the hallway, all while I ordered him to get back. I made a call on the radio for staff assistance, while still trying to push him away with my left arm. He continued pushing into me, while I was now [using] both arms to keep him away to create space. At this time, a second unknown inmate came out of the same TV room and was directly behind inmate Swanegan, on his back left shoulder and was attempting to get the unknown item passed to him. I ordered the 2nd inmate to leave, and he ignored that order. After another approximate 5-10 seconds of the unknown inmate and Swanegan shuffling something behind his back, the unknown inmate left the hallway and disappeared back into the TV room. I was able to get a few feet of distance now from inmate Swanegan and I pulled out my OC spray. I was giving inmate Swanegan the order to get down on the ground. After yelling that order 3 times, he [complied]. After another 15-30 seconds of inmate Swanegan laying on the ground and myself standing about a few steps away, other prison staff arrived in the upper hallway. He was handcuffed by another officer and was escorted to the Lieutenant's office. I confirmed via TruScope and WebSentry that inmate: Swanegan, Anthony . . . was the inmate involved.

(Id.)

Lieutenant S. Hanson began an investigation on April 20, 2025. (Id. at PageID 62.) The incident report he filed shows that he advised Swanegan of his rights,[1] and Swanegan stated he

[1] The report reads:

understood those rights. (Id.) Swanegan's statement about the incident was, "I did not bump him." (Id.) He "request[ed] witnesses from the TV room" but "did not request a review of video evidence." (Id.) Lieutenant Hanson completed his investigation on April 25, 2025. (Id.) He gave a copy of the incident report to Swanegan that day. (Id. at PageID 60.) Lieutenant Hanson told Swanegan that Officer Helland "added the 224 due to the report having elements to support that charge." (Id. at PageID 62.) The report also notes that the "initial report was served within 24 hours and investigated. The report was then sent back for rewrite to make corrections. The report was then re-served and the inmate was reread his rights when Officer Helland was back on duty and able to make the corrections." (Id.)

The Unit Discipline Committee ("UDC") conducted its hearing on April 29, 2025. (Id. at PageID 61.) Swanegan told the UDC that "the incident report is false and that he never touched the Officer at all and had a TV remote in his hand." (Id.) The UDC referred the charges to the Disciplinary Hearing Officer ("DHO"). (Id.) The UDC recommended "[m]ax sanctions if found guilty," including loss of good conduct time, visits, and phone privileges "[t]o deter future misconduct." (Id.) That same day, Swanegan was advised of his rights for the DHO hearing.[2] (Id. at PageID 67.) He asked that staff member Eng serve as his staff representative and that

---

> Inmate Advised of Right To Remain Silent: You are advised of your right to remain silent at all stages of the discipline process. Your silence may be used to draw an adverse inference against you at any stage of the discipline process. Your silence may not be used to support a finding that you have committed a prohibited act.

(Id.)

[2] Those hearing rights included the right to have a written copy of the charges, have a full-time staff member to represent him, have the ability to call witnesses or present documentary evidence, present a statement or remain silent, be present at the hearing unless "institutional safety would be jeopardized," and the ability to appeal the DHO's decision. (Id. at PageID 67.)

inmates Dan Thomas, Michael Murphy, and Justin Mosely testify that the "incident report is wrong [and] it did not go down that way [and] the officer was never touched." (Id. at PageID 65.)

DHO K Jones conducted Swanegan's disciplinary hearing on May 14, 2025. (Id. at PageID 69.) He was represented by staff member Eng. (Id.) Eng noted that Swanegan asked him to speak to the inmate witnesses and "find out what occurred." (Id.) Swanegan denied the charges and stated, "I didn't have anything to pass. We talked back and forth. I never touched him. I don't have a reason why I didn't submit to a search." (Id.)

Inmates Mosely, Murphy, and Thomas were called as witnesses. (Id. at PageID 70.) Each was asked, "What happened during the incident in question and was the officer touched?" (Id.) Mosely said, "He didn't have anything in his hand, and I didn't see him touch him." (*Id.*) Murphy said, "When Swanegan was leaving the TV Room, he bumped into the officer." (Id.) Thomas said, "I was in the hallway and could hear things got heated but I didn't see anything." (Id.)

The DHO concluded that Swanegan violated Code 298, most like Code 224 (Amended from Code 224), Assaulting Another Person Without Serious Injury,[3] and Code 307, Refusing to Obey an Order. (Id. at PageID 71.) The DHO found that he did not violate Code 199, most like Code 115, Attempting to Dispose of Anything During a Search.[4] (Id.) The DHO made those

[3] Code 298 provides for sanctions for "[i]nterfering with a staff member in the performance of duties most like another High severity prohibited act. This charge is to be used only when another charge of High severity is not accurate. The offending conduct must be charged as 'most like' one of the listed High severity prohibited acts." See BOP Program Statement 5270.09, table 1, available at 5270_009_cn_1.pdf (last accessed Oct. 5, 2026).

[4] Code 199 provides for sanctions for "[c]onduct which disrupts or interferes with the security or orderly running of the institution or the [BOP] most like another Greatest severity prohibited act. This charge is to be used only when another charge of Greatest severity is not

conclusions based on the incident report, Swanegan's statements, witness statements, and a staff memorandum from Lieutenant Hanson. (Id. at PageID 71–72.) The DHO noted that "nothing was observed as being 'passed' to another inmate. No evidence was recovered or physically seen nor was any other inmate identified as being the recipient of the possible contraband." (Id. at PageID 72.) Thus, there was not enough evidence to support the Code 199 charge. (Id.) The DHO noted further that Swanegan did not "present any evidence in [his] defense." (Id.)

The DHO sanctioned Swanegan with disallowance of twenty-seven days of good conduct time and ninety days' loss of commissary, email, and phone privileges for the Code 298 violation. (Id.) For the Code 307 violation, Swanegan received disallowance of seven days of good conduct time and thirty days' loss of tablet use and visits. (Id.) The DHO completed the report on July 14, 2025, and a copy was delivered to Swanegan on July 16, 2025. (Id. at PageID 73.) The report set forth Swanegan's appeal rights. (Id.)

Swanegan filed his § 2241 Petition here on February 2, 2026. (ECF No. 2.) He contends that the DHO hearing violated his due process rights because he was unable to meaningfully challenge Helland's testimony, which was given via the incident report, and the inmate witnesses' testimony. (Id. at PageID 4.) He argues that his inability to challenge the witnesses violated his rights under the Sixth Amendment's Confrontation Clause. (Id. at PageID 4–5.) He states that he was excluded from the DHO hearing when the inmate witnesses testified based on a determination that "his presence with general population inmates would '[j]eopardize institutional security.'" (Id. at PageID 6.) As relief, Swanegan requests: (1) that the DHO's disciplinary finding be vacated; (2) restoration of his forfeited good conduct time; (3) suspension

accurate. The offending conduct must be charged as 'most like' one of the listed Greatest severity prohibited acts." See id.

of all other sanctions; and (3) expungement of the incident report. (Id. at PageID 7.) Alternatively, he asks for a "new DHO hearing that complies with due process requirements." (Id.)

## APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(6) provides that a claim may be dismissed for "failure to state a claim upon which relief can be granted." When considering a 12(b)(6) motion, courts accept all well-pleaded allegations as true and construe the record in the light most favorable to the non-moving party. Phila. Indem. Ins. Co. v. Youth Alive, Inc., 732 F.3d 645, 649 (6th Cir. 2013). And courts "apply 'less stringent standards' in determining whether pro se pleadings state a claim for which relief can be granted." Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Even still, a habeas petition must allege "enough facts to state a claim to relief that is plausible on its face" to survive dismissal. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A district court is not permitted to consider matters beyond the complaint" when considering a motion to dismiss under Rule 12(b)(6). Mediacom Se. LLC v. BellSouth Telecommunications, Inc., 672 F.3d 396, 399 (6th Cir. 2012). If a court considers material outside of the pleadings, the motion to dismiss must be converted into a motion for summary judgment under Federal Rule of Civil Procedure 56, "and all parties must be given a reasonable opportunity to present all material pertinent to the motion." Rondigo, L.L.C. v. Twp. of Richmond, 641 F.3d 673, 680 (6th Cir. 2011). A court may, however, consider exhibits attached to the petition as well as exhibits attached to the motion to dismiss "so long as they are referred to in the complaint and are central to the claims contained therein," without converting the motion to one for summary judgment. Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426,

430 (6th Cir. 2008). The Court considers the attachments to Harrison's Motion to Dismiss here because they are central to Swanegan's claims.

## ANALYSIS

Under 28 U.S.C. § 2241, this Court is authorized to issue writs of habeas corpus on behalf of prisoners who are "in custody in violation of the Constitution or laws or treaties of the United States." Here, Swanegan contends that his due process rights were violated in the disciplinary process he was subjected to. In his § 2241 Petition, Harrison argues that Swanegan is entitled to no relief because his disciplinary proceedings did not violate due process and there was enough evidence presented at the hearing to conclude that Swanegan violated the Bureau of Prison ("BOP") Codes. (See ECF No. 9 at PageID 42.)

### A. Procedural Due Process

Swanegan suggests that the DHO hearing failed to satisfy his due process rights. (ECF No. 2 at PageID 4–6.) An inmate's right to due process arises only if a restriction implicates a constitutionally protected liberty interest. See Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Here, the loss of good time credit extended the duration of Robinson's confinement and, therefore, he has a liberty interest that is protected by the Due Process Clause. Sandin v. Conner, 515 U.S. 472, 477–78 (1995) (explaining Wolff v. McDonnell, 418 U.S. 539, 557 (1974) "held that the Due Process Clause itself does not create a liberty interest in credit for good behavior, but that the statutory provision [providing those credits] created a liberty interest in a 'shortened prison sentence' which resulted from good time credits . . . .").

In Wolff, the Supreme Court held that, where a prisoner is charged with a disciplinary offense that may result in loss of good time credit, due process requires (1) written notice of the charges at least twenty-four hours prior to the hearing; (2) the opportunity to "call witnesses and

present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; and (3) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action. 418 U.S. at 563–66; see Horton v. Hemingway, No. 21-1388, 2021 WL 5183547, at *1 (6th Cir. Nov. 8, 2021) ("A prisoner facing the loss of good-time credits is entitled to written notice of the charge, a written decision, and an opportunity to present evidence." (citing Wolff, 418 U.S. at 564–66)).

Due process was afforded to Swanegan. He received written notice of the charges on April 25, 2025. (ECF No. 9-1 at PageID 60.) He had the opportunity to call witnesses and did call the inmate witnesses at his DHO hearing. (Id. at PageID 70.) And he received a copy of the DHO report on July 16, 2025. (Id. at PageID 73.)

Even still, Swanegan contends that the DHO hearing violated his due process rights because he was unable to meaningfully challenge Helland's testimony, which was given via the incident report, and the inmate witnesses' testimony. (ECF No. 2 at PageID 4.) He argues that his inability to challenge the witnesses violated his rights under the Sixth Amendment's Confrontation Clause. (Id. at PageID 4–5.) He further argues that he was excluded from the DHO hearing when the inmate witnesses testified based on the DHO's unsupported determination that "his presence with general population inmates would '[j]eopardize institutional security.'" (Id. at PageID 6.)

Swanegan's reliance on the Confrontation Clause is misplaced. "[T]he right to confront witnesses does not apply in prison disciplinary proceedings." Hampton v. Williams, Nos. 20-3158/3420, 2021 WL 3519333, at *3 (6th Cir. Apr. 28, 2021) (citing Wolff, 418 U.S. at 567–68). And "[a]lthough inmates enjoy a constitutionally protected right to present witnesses and evidence during disciplinary hearings, prison officials have discretion to reasonably limit the

accused's presentation of evidence." Henning v. Sowders, 19 F.3d 1433 (6th Cir. 1994) (citing Wolff, 418 U.S. at 566). To be sure, "[t]he Supreme Court has not addressed a prisoner's right to attend his own disciplinary hearing, but several appellate courts have indicated that such a right is implicit in the prisoner's right to call witnesses and present documentary evidence at the hearing." Martinez-DeLeon v. Holinka, No. 09-cv-501-bbc, 2009 WL 4350258, at *3 (W.D. Wis. Nov. 24, 2009) (citing cases). But no court has held that the right to be present is absolute. See, e.g., Herbst v. Vannatta, 160 F. App'x 508, 510 (7th Cir. 2005) (noting that "the decision maker is not required to ensure the inmate's presence before conducting a disciplinary hearing").

Here, while Swanegan suggests that he was denied the ability to challenge Helland's testimony and statement in the incident report, he has provided no argument that he requested Helland to appear as a witness and that his request was denied. As noted above, Swanegan was permitted to present the three inmate witnesses that he requested to be at the hearing. Swanegan thus fails to demonstrate that his due process rights were violated when he was excluded from the hearing while the inmate witnesses testified. Further, because Swanegan had a staff representative who could question the inmate witnesses, he fails to demonstrate any prejudice from his exclusion from the hearing during their testimony.

**B. The Evidence**

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556. "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board." Sup't, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455–56 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the

evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 456. The "some evidence" standard may be satisfied solely by an incident report. See McCarthy v. Warden Lewisburg USP, 631 F. App'x 84, 86 (3d Cir. 2015); see also Hudson v. Johnson, 242 F.3d 534, 536-37 (5th Cir. 2001); McPherson v. McBride, 188 F.3d 784, 786 (7th Cir. 1999). Where there is some evidence in the record supporting the DHO's findings, the petitioner cannot demonstrate a due process violation. See Millhouse v. Warden Lewisburg USP, 785 F. App'x 931, 935 (3d Cir. 2019).

Swanegan cites Hill and suggests that the DHO "has provided no evidence." (ECF No. 2 at PageID 6.) His argument regarding a lack of evidence, however, goes to the DHO's decision to exclude him from the disciplinary hearing when the inmate witnesses testified. (Id.) He does not explicitly argue that the DHO's decision finding him guilty of the disciplinary charges is not supported by some evidence. The DHO noted that Swanegan "did not present any evidence in [his] defense," concluding that he was guilty based on the incident report, the inmate witnesses' statements, and Lieutenant Hanson's memorandum. (ECF No. 9-1 at PageID 72.) Even if this constituted "meager" evidence—which it does not—"the record is not so devoid of evidence that the findings of the [DHO] were without support or otherwise arbitrary." See Hill, 472 U.S. at 457. Thus, the DHO's decision was supported by "some" evidence as required under Hill.

For the reasons stated above, Swanegan is not entitled to relief under § 2241. Harrison's Motion (ECF No. 9) is therefore **GRANTED**, and Swanegan's § 2241 Petition (ECF No. 2) is **DENIED**.

## APPELLATE ISSUES

Federal prisoners who file petitions under § 2241 challenging their federal custody need not obtain certificates of appealability under 28 U.S.C. § 2253(c)(1). See Witham v. United States, 355 F.3d 501, 504 (6th Cir. 2004) (explaining that § 2253 "does not require a certificate of appealability for appeals from denials of relief in cases properly brought under § 2241, where detention is pursuant to federal process").

A habeas petitioner seeking to appeal must pay the filing fee required by 28 U.S.C. §§ 1913 and 1917. To appeal in forma pauperis in a habeas case under § 2241, the petitioner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Kincade v. Sparkman, 117 F.3d 949, 952 (6th Cir. 1997). Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). But Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the petitioner must file his motion to proceed in forma pauperis in the appellate court. See Fed. R. App. P. 24(a)(4)–(5).

For the reasons explained in the section above, the Court finds that any appeal would not be taken in good faith. The Court therefore **CERTIFIES** under Rule 24(a) that any appeal would not be taken in good faith and **DENIES** Swanegan leave to appeal in forma pauperis.[5]

**IT IS SO ORDERED,** this 6th day of October, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

[5] If Swanegan files a notice of appeal, he must also either pay the full $605.00 appellate filing fee or file a motion for leave to proceed in forma pauperis on appeal and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.